Good morning. My name is Ben Coleman. I represent Mr. Gomez-Mendez. I'll watch the clock and attempt to save a minute for rebuttal, if that happens. I submitted to the court today a supplemental citation. The case name is United States v. Bad Marriage. It's a familiar name to remember. The opinion was actually written by Judge Schwarzer, and I think that that opinion further supports the arguments that we've made in our briefs, which is that whether you want to call it the law of the case doctrine or the rule of mandate, the law is clear that there is an exception to those rules, and that is if there is an intervening change in the law, if a new case comes out, that either the rule of mandate or the law of the case doctrine does not apply. In this case, the government concedes that Salazar-Lopez, which is a case that was decided after the first appeal, that that case dictates that Mr. Gomez-Mendez's statutory maximum sentence is two years, and they also concede that harmless error analysis doesn't apply. It's our position that under cases like Bad Marriage and the other cases that we cited in our briefs, there's a clear exception to the law of the case and the rule of mandate doctrine based on this new rule. Ginsburg-McCabe. I agree that's another alternative way that this Court could resolve the case in our favor, which is that the first panel didn't even consider the Salazar-Lopez argument. But if the Court were to read the initial opinion as resolving that argument, which we agree it should not even read it that way, there still would be an exception, which is that there is a new change in the law. The other thing is this appeal has been pending the whole time. When Salazar-Lopez came down, this case has been pending the whole time. Yes. Don't we generally apply new law to pending cases? Yes. I guess I don't understand how the district court felt so constrained. I agree. And, you know, the thing is that the interesting thing is that I submitted the Salazar-Lopez case in the sentencing memorandum, and the government didn't even respond. And the Court put the case over so that the government could respond, and they still didn't respond, which to me was essentially a concession that I was correct, that the sentencing maximum was two years, but the Court still wouldn't impose the two-year maximum. And I agree. I don't know why the Court felt that it had to ignore recent Ninth Circuit case law that was directly on point, and we think the case should be sent back with instructions to impose a sentence of no more than two years. If there are no other questions, I'd save the remaining time for rebuttal. But isn't that contrary to the remand instruction? It went back simply on one issue, and that is whether the government improperly refused to apply for the or move for the one-point reduction. That was all that was before the district court. And it's our position, assuming that the courts were to look at the first opinion in that manner, the law is still clear under the – that there is an exception to the mandate doctrine. That is, if there is a new case that's decided after the first appeal, which dictates that what the district court would be doing is contrary to law, that the court has an obligation to follow the new law. And in the bad marriage case that Your Honor authored, Judge Berzon dissented. But all three judges agreed. She even agreed that there's an exception to the rule of mandate and to the law of the case doctrine, that if there is a new case that a court cannot do something – it cannot be mandated to do something that is clearly contrary to the then-existing law. I mean, it would be – it would essentially mean that courts would be issuing orders that they know are incorrect. And obviously, that's not, I think, something that we want the justice system to be doing. So even if the mandate – even if the court wants to view the mandate as being limited, the courts – the district court still had an obligation under this court's – under this court's new precedent to impose the current state of the law and to – and to follow Salazar-Lopez. What's the citation to that case that you're talking about? To bad marriage, it's 439 F. 3rd, 534 9th Circuit, 2006. And for example, what happened in bad marriage was that the district court originally imposed an upward departure from the sentencing guidelines. The district court found that the defendant had a horrible criminal history and departed upward. This – the case then came to this court. In the first appeal in bad marriage, this court reversed the upward departure and said that Your Honor – no, Your Honor was not on the panel for that opinion. This court reversed and said that the upward departure was incorrect, that the defendant's criminal history should not have warranted an enhanced sentence. The case went back to the district court. By the time the case went back to district court, the Supreme Court had decided Booker. So there was a change in the law. There was a new case. And the mandate was limited in bad marriage one. It said impose the sentence without the upward departure. But what the court did is the court said – the district court said, well, Booker has now come in to play. It's a new case, and I'm going to do the sentencing – the new sentencing under Booker because it was a new change even though it was a limited mandate that it had. And the court imposed, again, a higher sentence. The case came back up. And in that case, bad marriage, Your Honor, Judge Schwarzer said that the court did not have to follow the limited mandate because there was a new case, Booker, that had come down. And it's the exact same thing in this case. Even if the – even if the original mandate was limited, there was a new case that came down after the original – the original decision. And therefore, the district court should have applied the new law in effect at the time of the resentencing. Well, what do you say about the first court in this case having found that there's waiver of that issue? Well, I don't believe that the first court found that there was waiver of that issue. Again, this goes back to Judge Wardlaw's initial point, which is that I don't think the panel initially considered Salazar-Lopez, which is an indictment challenge, because Salazar-Lopez didn't even exist at the time. But even if – I also disagree, frankly, that there was waiver in that case. I had thoroughly briefed the issues. I specifically contended in those briefs that under the Supreme Court's decision in Cotton that the indictment was insufficient in this case and that the sentence should be limited to two years. For whatever reason, the court decided not to entertain those arguments and sent the case back down on another – on another basis. But since this case started, since the time of the guilty plea, I have been saying over and over and over again that the statutory maximum sentence was two years. I don't think there's any waiver in this case. I couldn't – if there's any waiver, it's on the part of the government. They've never responded to the arguments. So I don't think there's been any waiver. So just to get the chronology straight, at the time of the remand in the first Gomez case, Salazar hadn't been issued? I believe that the mandate issued in the – in this case, I can give you the exact – in the first appeal, the mandate issued on August 14th, 2007. Okay. Salazar-Lopez was not decided until October 24th, 2007, so approximately three months or two or three months later. So the prior decision couldn't have possibly considered the Salazar-Lopez? Impossible. The decision did not exist. The mandate – the opinion itself was issued on May 14th, 2007. I filed for rehearing, again, raising these issues. I was rejected, and the mandate ultimately issued on August 14th, 2007. And then it was not until over two months later, on October 24th, 2007, that Salazar-Lopez was decided. At that point, Mr. Gomez was being transported back to San Diego for resentencing, and that's when I raised the Salazar-Lopez arguments. Okay. Thank you. Thank you. You may reserve the rest of your time. Thank you. Good morning, Honors. I may please the Court. Stuart Young for Appellate in the United States. In terms of – I think it is prudent to be just a little bit more fair to the first It's clear that Appellant did raise the Covey and Sandoval issue, which is exactly what Salazar-Lopez relies on. And Covey and Sandoval relies on Apprendi. Now, the panel in a 28-J letter, the Appellant did raise those precise issues that he's now raising one more time. And that panel had deemed those issues to be with. Now, it's also clear that they say – footnote 10 is very instructive from the Gomez-Mendez first – from the first Gomez-Mendez opinion, that he filed the supplemental authorities, that in that 39-page opening brief filed by his counsel, Gomez-Mendez's only reference to the district court's finding of a subsequent removal appeared in a footnote. And he talks not – he doesn't talk just about Covey and Sandoval. He says, Section 1326B1 and 2 do not simply require a finding that a defendant suffered a prior conviction. There must also be a finding that the conviction was before the defendant's deportation and that it falls into a certain category. It's not Covey and Sandoval. And it's clearly not Salazar-Lopez either. Now, that panel opinion then further went in and said, moreover, an issue raised for the first time in a letter of supplemental authority is ordinarily deemed waived. What Mr. Gomez-Mendez had continually been complaining to the district court and then to the appellate court was that 1326B2 was unconstitutional, not talking about the timing aspect of the enhancements, but that the statute itself was unconstitutional. And it's unfortunate that both appellate and appellee had not provided either of the 20HA letters, that there was dueling 20HA letters that were provided to the panel. And in the government's 20HA letter, they had talked about how there was a homicidal standard, that there were no contested facts in the PSR, which has been submitted to this panel. All right, counsel. So assume that that argument was waived on the appeal in front of our prior panel. It was clearly made to the district court after the remand, right? It was brought up to the district court. That is correct. Now, the district court under Pimentel said that, look, your Apprendi argument, which the panel considered and said you'd waived. No. The panel said it waived it for purposes of this appeal. Then it remanded. Now we have a new proceeding, and it's raised, right? It is raised. That is correct, Your Honor. Okay. It's properly raised in the new proceeding. It's properly raised, but the what? And timely raised in the new proceeding. Well, frankly, I don't think it's timely raised in that his objections, and if you look at his objections, which are in his excerpts of record, his objections at the time of the guilty plea. He doesn't object under Covey and Sandoval or even, frankly, under Apprendi. Not the guilty plea. So I'm saying at this new, at this resentencing, after the remand, he timely raises Salazar-Lopez in connection with the new sentencing, right? And the yes. Okay. So really the question we should be looking at is not waiver, but we should be looking at what a district court is empowered to do upon a remand and whether this remand  Exactly, Your Honor. And our argument would be that it's explicit. I mean, if you look at the panel opinion, it says, We remand this case to the district court for further proceedings to determine whether the government improperly refused to file a motion for acceptance of responsibility. That's it. That's the only thing that's there. The panel goes through all the other arguments, including the plus 16. All right. So this isn't a kind of limited remand that I ordinarily would. They haven't been a district court judge. Of course not. And I know how district court judges really don't like remands that are unclear. So you want to tell them exactly what they're supposed to do on remand. So I probably, if I meant to limit this, probably would have written remand this case only to determine, because the general rule is that upon remand, the district court can consider many other things. In fact, we have cases that actually have benefited the government, because after remand, after a sentencing, when we vacate the sentence and we remand, the government is now allowed to bring in a lot more new evidence or new case law that actually would require a harsher sentence. And we had a big dispute on that. We may have even gone en banc. And we finally said, yeah, district court can let any, you know, consider anything on the remand unless you say only, or specifically. I mean, that language isn't here. But aside from that, why does the government, I mean, the government concedes that Salazar-Lopez is the law now. Why does the government want to take this position that he shouldn't have the benefit of the clear law that derives from the Sixth Amendment? The only position that we are taking is that it was a limited remand. Now, and Judge Wayland specifically says, you can take me up again. If a new panel says, you know what, that remand wasn't explicit, then, you know, then that panel will come back and say, you know, and allow me to look at other things for sentencing.  Ginsburg-McGill. I just think this whole thing is sort of a big waste. I mean, would any other defendant in his position would bet for how a narrow versus broad interpretation of this remand would have the benefit of clear law establishing that he should only have the two-year enhanced sentence. So now we go through what proceeding before Wayland, then you come back up here, and suppose we decide it goes back down. Why? I mean. Well, Your Honor, this is how we make law. And this is also how – I think it's also, it's also in Providence, the statement that harmless error analysis doesn't apply was in Providence in the government's  statement, I think, to your honors, clearly indicates the February 23, 2005 deportation and also clearly indicates the guilty plea for 261.5d, which is sex with a minor under 16. So why didn't he plead and prove it? Because the state of the law at the time of the guilty plea and at the first sentencing was that that didn't have to be pleaded or proven. I mean, if you look at the timeline, the first plea, the plea is on May 31, 2005. The sentencing was on August 29, 2005. The Gomez-Mendez 1 argument is on August 15, 2006. Cody and Sandoval doesn't even come out until after all of that. When did Apprendi come out, though? Apprendi came out in 2000, Your Honor. But the arguments that the statutory maximum was 20 years had been circulating through the district courts in San Diego for years. And with Almanet, you know, the argument that Almanet is tolerant and stuff is unconstitutional. I mean, that had been circulating through the district courts for years, and not once had that been overturned by the circuit until Cody and Sandoval in 2006, after the plea and the sentencing in this case. So that's why it wasn't, you know, that's why none of it was alleged or proven before a straight-up guilty plea. Hey, if he'd gone to trial, you know, this would clearly be a harmless error. We would have, you know, shown the February 23, 2005 deportation, and all of this would just be a harmless error analysis in the end. But with a straight-up guilty plea. Right, under which case is it harmless error? What? Under which case is it harmless error? Both Salazar-Lopez and Cody and Sandoval. Right, right. So why didn't you handle it straight up? I'm sorry. Argue it harmless error. That was an improvident error in my briefs, Your Honor. I was not aware of the cases that uncontested facts from the PSR are admissions. Clearly, the appellant did make legal objections to the district court, but there's no objections. Did he challenge those facts? He did not challenge those facts, Your Honor. You can ask him. I've got the objections to the PSR, which we had not filed with our experts. That would have been a good argument. Exactly, Your Honor. I was in the middle of two trials when I was writing this brief, Your Honor. It's my fault, Your Honor. Don't beat yourself up. I'm just saying that there's procedural little errors. Maybe we should send it back and let Judge Whalen consider both sides of it. And that would make a lot of sense, Your Honor. I mean, it still is our position that this was a more limited remand than what appellant is saying. But I understand Your Honor's argument that it should have said only, rather than, you know, just explicitly say what the remand was for. Could you work out a new play agreement and work this out? You know, that is possible, Your Honor. I'm not sure. I apologize. I see my time is up. You're answering my question, so I'm concerned about it. It is possible we could work this out with some kind of play agreement. I will say that there were clearly no contested facts, factual allegations that were contested in the PSR. The appellant did make legal objections that the stat max is 20 years, but did not contest any of the allegations in the PSR, which Your Honors have on page 10. So I'm concerned about that. Okay. Thank you. And I don't know if I have a copy of that bad marriage case, but I'd like to get a copy. I don't have a copy of it. Mr. Coleman just told me about the case this morning, but I'm sure we can have that sent to you. I'll have a copy. Don't worry. I'll have a copy of it. Thank you. Thank you, Your Honors. Okay. U.S. v. Oh, you did have some time left. You're right. Sometimes that's the worst thing. I get up here for a rebuttal and lose the case. But I just want to see if you can rebuttal. Well, you better think twice before doing it. I just want to say a couple things about harmless error. The first thing is that harmless error doesn't apply because I had a – I made a timely challenge at the time of the guilty plea, and therefore, under the Dubot rule, because we're talking about an insufficiency of the indictment, harmless error analysis doesn't apply. In the government's brief, not only did they just not make a harmless error argument, they affirmatively conceded that Dubot – that the Dubot line of cases controlled – and they actually cited an unpublished opinion from this court from this year, which is – since it's from 2008 and under the rule of unpublished opinions can't be cited. They actually cited a case that agreed that the Dubot line of cases controls when a timely objection is made. And I just find it ironic that the government is trying to, through some hypertechnical argument, contend that I've waived something when they, in their briefs, expressly conceded that there is no harmless error analysis that can apply. And now, at the 11th hour and 59th minute, they come up with an oral argument and make an entirely new harmless error argument. If waiver applies in this case at all, it applies against the government. And we cited a First Circuit case that says what's sauce for the defendant's goose is sauce for the government's gander. And they are subject to waiver rules just like the defendant is subject to waiver rules. And if this court allows the government, after not making this argument in the first district court, not making this argument in the second district court, expressly conceding in their brief on appeal that harmless error analysis doesn't apply, and now, at an oral argument, they want to say, oh, the error is harmless, when that's not even the correct set of the law. I mean, if there's waiver ever in a case, that's waiver. And so our position is that the case should be sent back down with instructions that the maximum sentence is two years. Thank you. Thank you. All right. United States v. Gomez.
judges: Farris, Wardlaw, Schwarzer